**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

PRECEDO CAPITAL GROUP INC. and
CONTINENTAL ADVISORS SA,

                        Plaintiffs,

               v.

TWITTER INC.,

                  Defendant.

-----------------------------------------------------------------x

                        :
                        :     No. 13-Civ-7678-SAS
                        :
                        :     **ORAL ARGUMENT REQUESTED**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE FIRST AMENDED VERIFIED COMPLAINT**

 

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile:  (212) 455-2502

*Attorneys for Defendant Twitter, Inc.*

**TABLE OF CONTENTS**

**Page**

Table of Contents ............................................................................................................i

Table of Authorities................................................................................................... ii

I.      Plaintiffs Rely On Unalleged Facts ..................................................................1

II.     Plaintiffs Have Not Alleged Agency ................................................................2

        A.      A Law Firm's Clients Are Not Agents Of Each Other ..........................4

        B.      A "Ratification" Theory Cannot Rest On The Unsupported
                Assumption That Wilson Sonsini Passed Confidential GSV Asset
                Information To Twitter.......................................................................5

        C.      Plaintiffs' Speculation About The Source Of GSV Asset's
                Documents Is Insufficient To Establish Agency ......................................5

        D.      Reference To "Standard Practice" In The "Securities Industry"
                Goes Nowhere ..................................................................................7

III.    Plaintiffs Have Not Adequately Pled Fraud .......................................................7

IV.     Plaintiffs Have Failed To Allege Damages .......................................................9

V.      Further Amendment Would Be Futile ...............................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1230 Park Assocs., LLC v. N. Source, LLC*, 852 N.Y.S.2d 92 (N.Y. App. Div. 1st Dep't 2008).................................................................................................................6

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, Nos. 09 Civ. 9783(RWS), 09 Civ. 9784(RWS), 2013 WL 6484727 (S.D.N.Y. Dec. 9, 2013)....................................10

*CAC Grp., Inc. v. Maxim Grp., LLC*, No. 12 Civ. 5901(KBF), 2012 WL 4857518 (S.D.N.Y. Oct. 10, 2012)........................................................................................1

*Chill v. General Electric Co.*, 101 F.3d 263 (2d Cir. 1996)............................................9

*DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54 (S.D.N.Y. 2010)................................2

*In re FBR Inc. Secs. Litig.*, 544 F. Supp. 2d 346 (S.D.N.Y. 2008) ................................7

*In re Perle*, 725 F.3d 1023 (9th Cir. 2013)...............................................................4, 5

*Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413 (N.Y. 1996) ...........................9

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006).................................................9

*McStay v. IC Sys., Inc.*, 174 F. Supp. 2d 42 (S.D.N.Y. 2001) .......................................7

*Municipality of Bremanger v. Citigroup Global Mkt. Inc.*, No. 09 CIV. 7058 (VM), 2013 WL 1294615 (S.D.N.Y. Mar. 28, 2013).....................................................5

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No. 03 Civ. 0613 GBD, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004).........................................................3

*Property Advisory Grp., Inc. v. Bevona*, 718 F. Supp. 209 (S.D.N.Y. 1989) ............3, 7

*Sobel v. Eggleston*, No. 12 Civ. 2551 DAB, 2013 WL 1344712 (S.D.N.Y. Mar. 28, 2013).......................................................................................................................1

*Stamelman v. Fleishman-Hillard, Inc.*, No. 02 Civ. 8138 SAS, 2003 WL 21782645 (S.D.N.Y. July 31, 2003)..................................................................................9

*Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329 (DC), 2008 WL 5110919 (S.D.N.Y. Nov. 26, 2008)........................................................................................6

## I.      PLAINTIFFS RELY ON UNALLEGED FACTS

It is "axiomatic" that "a plaintiff cannot amend a complaint with new allegations

contained in an opposition to a motion to dismiss." *CAC Grp., Inc. v. Maxim Grp., LLC*, No. 12

Civ. 5901(KBF), 2012 WL 4857518, at *1 n.1 (S.D.N.Y. Oct. 10, 2012); *see also Sobel v.*

*Eggleston*, No. 12 Civ. 2551 DAB, 2013 WL 1344712, at *4 n.3 (S.D.N.Y. Mar. 28, 2013)

(refusing to consider new allegations which were not "alleged in the Complaint, attached to the

Complaint as exhibits, incorporated by reference into the Complaint, or relied on heavily by the

complaint."). In response to Twitter's motion to dismiss, Plaintiffs make the following factual

assertions, ***none*** of which is alleged in the First Amended Verified Complaint (the "Complaint"):

- "Plaintiffs have done numerous deals solely on the representations by an agent[.]" Pl. Br. at 17.

- GSV Asset was "Twitter's ***only*** publicly approved buyer[.]" *Id.* at 16 (emphasis added).

- Hanson of GSV Asset told Porcelli of Plaintiff Continental Advisors that "Twitter wished to sell Twitter shareholder stock to avoid a market overhang because of the low cost basis within that block of stock." *Id.* at 19.

- Twitter was contacted by unnamed "potential investors" about GSV Asset's status and, at unspecified times, Twitter "did not deny that GSV was authorized to act as its agent." *Id.* at 16. Twitter also told these "potential investors" that "it was aware of the GSV presentation." *Id.*

- "Twitter did not contact GSV Asset and demand[] that they cease selling Twitter shareholders' stock[.]" *Id.* at 10; *see also id.* at 14-15.

- Plaintiffs "reasonably believed" that Twitter "required GSV Asset" to use the Wilson Sonsini firm, and that "Twitter used the same attorneys as GSV Asset" so that Twitter could "control" GSV Asset's transactions. *Id.* at 11-12.

- On the so-called shareholder list that GSV Asset showed Plaintiffs, "the names were all blocked out" which, "indicat[es] that Twitter only wanted its Agent, GSV Asset, to have access of the list." *Id.* at 12.

- The shares that were to be sold by Twitter shareholders and purchased by the

1

investment fund being marketed by Plaintiffs were restricted, such that "Twitter could not have sold the shares even if they wanted to."  *Id.* at 21.[1]

The only thing that these new assertions do is underscore the insufficiency of the Complaint.

Plaintiffs are wrong that their new affidavits were "integral" to the Complaint.  *See* Pl. Br. at 19.  "Integrality" requires that a plaintiff relied upon the documents in drafting the Complaint, which is logically impossible here, as the affidavits did not exist when the Complaint was filed.  *See DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) ("[Plaintiff], however, is unable to satisfy the second integrality prong—reliance on the documents in framing his complaint . . . . the complaint does not mention, let alone rely heavily upon, these extrinsic documents.").  Plaintiffs' new factual assertions are properly disregarded.

But in any event, the "new" facts do not change the fact that Plaintiffs have no claim against Twitter.  Plaintiffs have still failed to allege *any* words or conduct *by Twitter*, let alone words or conduct sufficient to adequately allege that GSV Asset was Twitter's agent.  Even if they try to pretend otherwise, Plaintiffs continue to rely only on the words and conduct of *GSV Asset*, which are legally insufficient.  Nor do Plaintiffs' "new" facts adequately allege fraud.

The failure to plead agency (Point II) and the failure to plead fraud (Points III and IV) are each independent grounds for dismissal of the Complaint.

## II.    PLAINTIFFS HAVE NOT ALLEGED AGENCY

Plaintiffs do not dispute that in order to state a claim against Twitter for statements allegedly made by GSV Asset, they must allege agency.  Plaintiffs have not done so.

Plaintiffs have retreated from the numerous conclusory allegations in the Complaint

---

[1]     The Complaint alleges Plaintiffs were hired by GSV Asset to find investors for a fund, called @GSV, that was to purchase Twitter stock from Twitter shareholders (not Twitter itself). The opposition, however, refers to an alleged transaction where Twitter is the seller.  Pl. Br. at 21.  If Plaintiffs cannot keep their own allegations straight, they have plainly failed to satisfy Rules 8(a) or 9(b).

asserting that Twitter *actually* authorized GSV Asset to act as its agent.  *See, e.g.*, Compl. ¶ 28

("Upon information and belief, Twitter authorized GSV Asset to enter into agreements with

agents and/or financial advisors, namely, Plaintiffs. . . ."); *see also id.* ¶¶ 5, 11, 12, 18, 24, 29, 31,

32, 33, 37, 49, 55, 58, 64, 67, 69.  The reality is that the Complaint does not allege a single word

or act by Twitter, but only what GSV Asset allegedly said to Plaintiffs about Twitter.  As set

forth in Twitter's opening brief, an "agent cannot confer authority upon himself or make himself

an agent merely by saying that he is one."  *Nuevo Mundo Holdings v. Pricewaterhouse Coopers*

*LLP*, No. 03 Civ. 0613 GBD, 2004 WL 112948, at *6 (S.D.N.Y. Jan. 22, 2004).

Plaintiffs now claim that GSV Asset had "apparent authority."  But this does not change

the analysis.  As Plaintiffs concede, "[a]pparent authority is conferred by the *conduct of a*

*principal* which justifies a third party's belief that an agency relationship exists."  Pl. Br. at 8

(emphasis added) (quoting *Property Advisory Grp., Inc. v. Bevona*, 718 F. Supp. 209, 211

(S.D.N.Y. 1989)).  Indeed, in *Nuevo Mundo*, which is on all fours with the facts of this case, *see*

Def. Op. Br. at 8-9, plaintiffs advanced a theory of apparent authority, which was rejected.  2004

WL 112948, at *4-5.  As here, the only allegations in *Nuevo Mundo* were that the purported

agent claimed to have been authorized by the purported principal.  *Id.* at *6.  Plaintiffs make no

attempt to distinguish *Nuevo Mundo* or the other cases cited in Twitter's brief on this point.[2]

Plaintiffs point to no allegations of conduct by Twitter that would give rise to apparent

authority — because they allege no words or conduct by Twitter at all.  Compl. ¶ 28 ("there was

only communication with GSV Asset during the offering").  Instead, Plaintiffs point to the fact

---

[2]     Plaintiffs' contention that "apparent authority may arise absent any direct contact
between the principal and the third party" is a red herring.  The Complaint does not only fail to
allege "direct contact" it fails to allege any conduct by Twitter at all.  In any event, Plaintiffs'
case, *Property Advisory Group,* relates to the question of the *scope* of authority of someone who
is authorized to serve as an agent, not whether any agency exists at all.  *See infra* § II.D.

that Wilson Sonsini, a large law firm, did legal work for both GSV Asset and Twitter, and that

GSV Asset allegedly gave Plaintiffs certain documents (not attached to the Complaint or

provided to the Court) that "must have" come from Twitter.  They are insufficient as a matter of

law plausibly to infer agency.

### A.   A Law Firm's Clients Are Not Agents Of Each Other

The crux of Plaintiffs' opposition is the theory, barely mentioned in the Complaint, that

GSV Asset's use of a law firm that also represented Twitter makes GSV Asset an agent of

Twitter.  That the same law firm did legal work for GSV Asset and Twitter is entirely irrelevant.

Plaintiffs cannot cite a single authority for the erroneous proposition that a law firm's clients

become agents of each other by virtue of hiring the same law firm.  Plaintiffs' allegations amount

to: Wilson Sonsini represented GSV Asset when GSV Asset hired Plaintiffs to find investors for

the @GSV investment fund, and a year later Wilson Sonsini also represented Twitter in its IPO.[3]

These are the sole alleged *facts* on which Plaintiffs' theory relies.

Plaintiffs, without any basis, speculate that Wilson Sonsini, while ostensibly representing

GSV Asset, was really working for, and reporting back, to Twitter.  In Plaintiffs' way of

thinking, "[i]t is implausible to think that Wilson Sonsini, who was representing Twitter, would

not disclose to Twitter that another party was planning on selling Twitter shareholder stock."  Pl.

Br. at 12.  To the contrary, it is implausible to assume that a law firm would breach its ethical

duties by sharing one client's confidences with another client.  It is also baseless and contrary to

the law.  *See In re Perle*, 725 F.3d 1023, 1028 (9th Cir. 2013) ("Perle has identified no case, nor

are we able to find one, that imputes to a client knowledge that his lawyer gained while

representing a *different* client.  In fact, the authority is to the contrary.").

---

[3]   That Wilson Sonsini represented Twitter in its IPO is asserted in Plaintiffs' brief but not
alleged in the Complaint.  The argument above shows this new allegation makes no difference.

**B.      A "Ratification" Theory Cannot Rest On The Unsupported Assumption That Wilson Sonsini Passed Confidential GSV Asset Information To Twitter**

Plaintiffs' new theory that Twitter "ratified" GSV Asset's conduct rests on the assumption that Twitter knew about GSV Asset's activities.  Pl. Br. at 14.  But no factual allegation supports this assumption.  Instead, Plaintiffs assume that Wilson Sonsini passed GSV Asset's confidential information to Twitter.  *See id.* at 15 ("Twitter was clearly aware of the Mandate Agreements . . . . Wilson Sonsini, who was Twitter's attorneys, drafted the agreements . . .").  This implausible assumption is contrary to the law.  *In re Perle*, 725 F.3d at 1028.

Absent a factual allegation that Twitter knew what GSV Asset was allegedly doing, the fact that Twitter did not stop GSV Asset is meaningless, both logically and as a matter of law. *See, e.g.*, *Municipality of Bremanger v. Citigroup Global Mkt. Inc.*, No. 09 CIV. 7058 (VM), 2013 WL 1294615, *13, *21 (S.D.N.Y. Mar. 28, 2013) (finding plaintiffs failed to establish ratification because plaintiffs did not offer any evidence that defendant "was fully aware of the material facts relating to the transaction, specifically the nature of [purported agent's] representations to Plaintiffs").[4]  Failure to put a stop to conduct of which one is unaware cannot be ratification of it.

**C.      Plaintiffs' Speculation About The Source Of GSV Asset's Documents Is Insufficient To Establish Agency**

Allegations that GSV Asset (the purported agent) provided documents to Plaintiffs (a third party) while representing that the documents came from Twitter (the purported principal) are insufficient, as a matter of law.  *1230 Park Assocs., LLC v. N. Source, LLC*, 852 N.Y.S.2d 92,

---

[4]      Plaintiffs' assertion that Twitter was "contacted by accredited investors" regarding GSV Asset's conduct is not alleged in the Complaint.  Plaintiffs cite only a new affidavit from Edward Schneider which claims that as of October 2, 2012, Twitter knew of GSV Asset's offering.  The only reasonable inference that could be drawn from the Complaint's allegation that GSV Asset postponed the closing on September 28, 2012, and then cancelled it on October 5, 2012 is that Twitter forced GSV Asset to stop its unauthorized conduct as soon as Twitter learned of it.

93 (N.Y. App. Div. 1st Dep't 2008); *Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329

(DC), 2008 WL 5110919, at *5 (S.D.N.Y. Nov. 26, 2008); *see* Def. Op. Br. at 10-11.  Plaintiffs

do not discuss, let alone distinguish, either of these cases.

Plaintiffs allege only that GSV Asset provided Plaintiffs with documents that GSV Asset

claimed — or Plaintiffs believed — were provided by Twitter.  From these legally insufficient

allegations, Plaintiffs set forth a series of speculations, each building on the last.

Plaintiffs assume that a document GSV Asset showed to Plaintiffs was in fact a list of

Twitter shareholders, and further assume that Twitter must have provided it.[5]  Plaintiffs point to

no facts to support either assumption, confirming they are merely speculating, or relying on what

GSV Asset said.  Pl. Br. at 12-13.  Plaintiffs also concede they are speculating (a/k/a "reasonably

believed") about the source of the financial information that GSV Asset placed onto PowerPoint

slides.  *Id.* at 14.  Plaintiffs' speculation was based on "[t]he confidential nature of the

information tied in with GSV Asset's representations that the material was provided by

Twitter[.]"  *Id.*  Again, GSV Asset cannot create its own authority by making statements.

Based on their assumption that Twitter provided certain information to GSV Asset,

Plaintiffs further speculate Twitter ***must*** have done so to make GSV Asset its agent in a

transaction with Plaintiffs.  But this is not a plausible inference.  Even if Twitter had provided

information to GSV Asset, it does not follow that Twitter knew that GSV Asset was using the

information to encourage Plaintiffs to enter into a transaction, let alone that Twitter authorized

GSV Asset to use the information in that way.  Plaintiffs offer no factual allegations to bridge

this plausibility gap.

---

[5]      Plaintiffs now say that the names on the list of shareholders that GSV Asset displayed
were "blocked out."  So it now seems that Plaintiffs are only claiming that GSV Asset ***said*** it was
a list of shareholders.  *See* Pl. Br. at 12.

### D.   Reference To "Standard Practice" In The "Securities Industry" Goes Nowhere

That Plaintiffs took the risk in other circumstances of dealing only through intermediaries does not entitle them to ignore the settled law to hold Twitter vicariously liable here. *Property Advisory Group* does not support Plaintiffs.  In that case, a principal appointed a "managing agent" with ***actual*** authority, with one limitation that was contrary to the custom in the industry. The principal did not communicate that limitation to the third parties with which the managing agent dealt.  The court concluded that in such circumstances, the managing agent's ***apparent*** authority extended to the matters covered by the limitation, because "[s]pecial or secret ***instructions or limitations*** upon the authority of an agent, ***whose powers would otherwise be coextensive with the business entrusted to him*** must be communicated to the party with whom he deals, or the principal will be bound to the same extent as if they were not given."  718 F. Supp. at 213 (emphasis added).  *Property Advisory Group* does not hold that agency can be created whole cloth by the "custom" of an industry.

## III.   PLAINTIFFS HAVE NOT ADEQUATELY PLED FRAUD

**Rule 9(b).**  Plaintiffs have ignored Twitter's argument that fraud may not be alleged on "information and belief." Def. Op. Br. at 14-15.  As noted in Twitter's opening brief, Plaintiffs improperly offer such allegations even as to matters squarely within Plaintiffs' own knowledge. And contrary to Plaintiffs' conclusory assertion in a footnote, Plaintiffs have not accompanied their 30 allegations made upon "information and belief" with "a statement of the facts upon which the belief is founded." *McStay v. IC Sys., Inc.*, 174 F. Supp. 2d 42, 48 (S.D.N.Y. 2001).

In any event, out of their 79 paragraph Complaint, Plaintiffs now point to five alleged misstatements as satisfying Rule 9(b).  Pl. Br. at 19-20.  Allegations that fail to satisfy Rule 9(b) should be disregarded. *In re FBR Inc. Secs. Litig.*, 544 F. Supp. 2d 346, 353 (S.D.N.Y. 2008)

("If particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim." (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003))).

For one of the five alleged misstatements, Plaintiffs cite a new affidavit, not an allegation in the Complaint.  Pl. Br. at 19 (citing Aff. of Mark Porcelli).  Another does not allege a time, place, or speaker.  Compl. ¶ 9.  The remaining three are representations by GSV Asset that it was authorized by Twitter.  *Id.* ¶¶ 10, 27, 34-35.  If Plaintiffs' fraud claim is premised on the theory that GSV Asset misrepresented its authority, then by definition, Twitter cannot be held liable for GSV Asset's misstatements.

**Falsity.**  Plaintiffs concede that alleging the falsity of GSV Asset's statements about Twitter's intention to permit a sale of Twitter stock requires more than allegations that a sale never occurred.  Trying to patch this hole, Plaintiffs now contradict the allegations in the Complaint with new factual assertions.  They now argue that "the Twitter shareholder stock was restricted" and "[n]either Twitter nor the shareholders could have sold or pledged the stock[.]"  Pl. Br. at 21.  But in the Complaint, Plaintiffs allege the opposite, *i.e.* that @GSV (the investment fund run by GSV Asset) "could only purchase Twitter shares owned by . . . Twitter shareholders with the consent and approval of Twitter management[.]"  Compl. ¶ 8.  They also allege, "[h]ad Twitter intended to sell the stock from the beginning, the transactions could have easily been completed."  *Id.* ¶ 63.

**Intent / Scienter.**  Plaintiffs say nothing in response to Twitter's argument that the purported motive to "fix a private market floor price" or "prime the market" is not a plausible basis for Twitter to commit fraud.  These purposes would be served by allowing GSV Asset to complete the sale of stock.  It is alleged that the sellers would have been third-party shareholders,

8

so it would have cost Twitter nothing to allow the transactions to proceed.

Plaintiffs have also failed to distinguish *Chill v. General Electric Co.*, which held allegations that a defendant "desires its stock to be priced highly by the market" to be insufficient to allege scienter.  101 F.3d 263, 268 n.4 (2d Cir. 1996).  Plaintiffs argue that *Chill* was a securities fraud case, but the same scienter analysis applies to common law fraud claims. *Stamelman v. Fleishman-Hillard, Inc.*, No. 02 Civ. 8138 SAS, 2003 WL 21782645, at *6 n.4 (S.D.N.Y. July 31, 2003) (Scheindlin, J.).  Plaintiffs' insistence that here, "Twitter's intention was to use Plaintiffs to create a market floor price" does not distinguish *Chill* at all, as that is merely an allegation that Twitter's motive was to increase the price of its shares.

**Speaker's Knowledge of Falsity**.  Only in a footnote do Plaintiffs address a key element of a claim of fraud: the speaker's knowledge of the falsity of the statement.  Plaintiffs argue that "Plaintiffs have show [sic] that there was an agency relationship, causing Twitter to make the statements which have been alleged to be false."  Pl. Br. at 23 n.4.  But Plaintiffs miss the point. Plaintiffs seek to hold Twitter vicariously liable for GSV Asset's fraud.  They must therefore allege facts sufficient to show that GSV Asset committed fraud, which requires that ***GSV Asset*** knew its statements were false when it made them.  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006).

## IV.    PLAINTIFFS HAVE FAILED TO ALLEGE DAMAGES

Plaintiffs concede that nearly all the damages they seek are lost profits (or punitive damages).  Pl. Br. at 23.  These are not recoverable in a claim for fraud.  Plaintiffs misconstrue the "out-of-pocket" rule of *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 421 (N.Y. 1996), to claim that it means they are entitled to lost profits, which is exactly the opposite of what *Lama Holdings* says.  Plaintiffs are not "out-of-pocket" the amounts that investors had purportedly "deposited in escrow."  Pl. Br. at 24.

As to their claim for $100 million in punitive damages, Plaintiffs have not even attempted to allege that the alleged conduct directed at Plaintiffs was "part of a pattern directed at the public generally."  Plaintiffs do not allege that the alleged fraud — convincing them to undertake marketing efforts for an investment fund that would be unable to acquire Twitter stock — was directed at anyone other than Plaintiffs.  This case has nothing to do with Twitter's IPO or any public shareholders — except that Plaintiffs admit waiting until a week before Twitter's IPO to sue on claims that Plaintiffs had known about for months.  Pl. Br. at 1.

## V.       FURTHER AMENDMENT WOULD BE FUTILE

Plaintiffs have already amended their Complaint once, in response to Twitter's pre-motion letter raising exactly the same defects in the Complaint as are the subject of Twitter's motion to dismiss.  In fact, after they did so, Twitter sent Plaintiffs a second pre-motion letter explaining that the defects persisted.  Plaintiffs elected to stand on their Complaint.  If Plaintiffs could have remedied the Complaint to state a claim, they would have done so before now.

Although Plaintiffs now introduce various affidavits and new factual assertions in their opposition, none would change the result.  Plaintiffs still concede that they had no contact with Twitter, and so Plaintiffs will never be able to allege that Twitter did or said anything that would create an agency relationship.  As a matter of law, only the principal's conduct can do so. Without agency, Plaintiffs will never be able to state a claim against Twitter for statements purportedly made by GSV Asset.  Thus, amendment would be futile.  Moreover, Plaintiffs' tactics waste judicial resources and should not be rewarded.  *See BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, Nos. 09 Civ. 9783(RWS), 09 Civ. 9784(RWS),  2013 WL 6484727, at *6 (S.D.N.Y. Dec. 9, 2013) ("[A] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." (quoting *State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990))).

10

Dated: New York, New York
February 7, 2014

Respectfully submitted,


/s/ Bruce D. Angiolillo
Bruce D. Angiolillo
Jonathan K. Youngwood
Daniel J. Stujenske
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York  10017
Telephone: (212) 455-2000
Facsimile:  (212) 455-2502

*Attorneys for Defendant Twitter, Inc.*